UNITED STATES *v.* MONSANTO CHEMICAL Co. *et al.* (No. 1673).[1]

1. EVIDENCE.
   A British tariff regulation, quoted and referred to in brief of counsel, but not offered or received in evidence, can not be considered as evidence.
2. DENATURED TEA SWEEPINGS—SEGREGATION—EVIDENCE—PRESUMPTION IN FAVOR OF COLLECTOR'S CLASSIFICATION.
   The presumption of correctness attaching to the collector's classification of denatured tea sweepings (a mixture of tea sweepings, lime, and asafetida) as an entirety (tea sweepings) under paragraph 13, tariff act of 1913, is not overcome by a claim that the lime content is dutiable separately, unless it be shown that the lime and tea sweepings have each maintained their identity in the mixture, and unless it be shown how much is tea sweepings and how much is lime.

United States Court of Customs Appeals, December 21, 1916.

APPEAL from Board of United States General Appraisers, Abstract 39015.

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*Thomas F. Tumulty*, assistant attorney, of counsel), for the United States.

*Levi Cooke* for appellees.

[Oral argument October 10, 1916, by Mr. Hanson and Mr. Cooke.]

Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

Smith, Judge, delivered the opinion of the court:

Tea sweepings, mixed with a percentage of lime and asafetida for the purpose of precluding their use as tea, were classified by the collector of customs as tea sweepings, and duty was assessed on the full weight of the mixture at 1 cent per pound under the provisions of paragraph 13 of the tariff act of 1913, which paragraph reads as follows:

13. Caffein, $1 per pound; compounds of caffein, 25 per centum ad valorem; impure tea, tea waste, tea siftings or sweepings, for manufacturing purposes in bond, pursuant to the provisions of the act of May sixteenth, nineteen hundred and eight, 1 cent per pound.

The importers filed with the collector of customs in the manner and within the time prescribed by law their protests, in which they claimed that the merchandise was tea waste, to which, in accordance with the regulations of the "English customs," lime and asafetida had been added to prevent its use for human consumption. These protests fairly set up the claim that duty should have been taken by the collector on the weight of the goods less the weight of the lime and asafetida, and that no duty at all should have been imposed on the lime or asafetida.

The Board of General Appraisers held in effect that the importation was composed of mingled goods which were separable, and that it should not have been subjected to duty as an entirety. The claim of the importers that the specific rate of duty prescribed for tea sweepings should not have been imposed on the full weight of the goods was therefore sustained, and the collector was directed to assess duty on the tea sweepings "less the amount of lime shown and upon the lime as provided for in the statute." The Government appealed.

It appears from the report of the appraiser at New York that "the merchandise consists of tea waste or tea sweepings denatured by the use of asafetida and lime." On the hearing before the board, counsel for the importers announced his intention of offering what he said was a London port order, requiring the addition to tea sweepings of 10 per cent of denaturants. The port order was never actually offered or received in evidence. The brief of the Government, however, admits that Great Britain does require that tea sweepings shall be mixed with at least 10 per cent of lime and asafetida in order to denature the tea sweepings and render them unfit for human consumption, but insists that it does not appear from the regulations whether the mixture is made on the basis of volume or weight. The importers set out in their brief what purports to be a copy of the regulations in question, but as those regulations were neither offered nor received in evidence it is appar-

ent that we can not consider them for the purpose of adding anything to the admission made by the Government.

Evidently the addition of asafetida and lime to the tea sweepings was designedly made and apparently had for its purpose the production of a class of tea sweepings which was unfit for use as tea and which without the admixture would not be merchantable in Great Britain. As the denaturing substances were added to the tea sweepings in order to render the latter unavailable for human consumption, it would seem fair to presume that the product was made up to be used as an entirety not readily resolvable into its original elements, and that the lime, asafetida, and tea sweepings of which it is composed are no longer different, distinct, and independent commodities, but the constituents of the single commodity known as denatured tea sweepings. Be that as it may, it is very certain that the importation as it came into the country presented itself not as three different classes of merchandise but as an article which at first instance might well be treated by the collector as an entirety. The collector so treated it, inasmuch as he found it to be denatured tea sweepings, and classified the entire importation as tea sweepings dutiable at the rate imposed on merchandise of that kind. To overcome the presumption of correctness attaching to that decision it was necessary for the importer, after protests, to establish by competent proof before the Board of General Appraisers that the importation was not an entirety, but three, or at least two, different kinds of merchandise separately assessable for duty. The evidence in the record establishes that the tea sweepings were denatured by the addition of a certain percentage of lime and asafetida, but it does not show, in our opinion, that the denaturing ingredients so far maintained their identity that they could be properly regarded as importations of lime and asafetida. The manifest purpose of the lime and asafetida in the product was to render it unfit for use as tea, and in accomplishing that result it can not be safely said, in the absence of evidence, that the denaturing substances themselves were unaffected to the extent that they retained their identity. It is true that the chemical analyses shows that in one of the importations there is 8.33 per cent of lime and in the other 6.45 per cent of lime, but that is no proof at all that the lime and tea sweepings have not become so intimately united as to constitute a single entity. Indeed, that such a union was not only possible but may have actually taken place seems to have been rather borne out than otherwise by the fact that from $16\frac{1}{2}$ to $35\frac{1}{2}$ per cent of the original lime content was not identifiable even by chemical analysis. For all that we know and for all that the board knew from the evidence denatured tea sweepings are not only bought abroad as entireties but sold and used for manufacturing purposes in this country as

entireties, and under such circumstances it would be going a bit far to consider the components of the merchandise as separate entities, especially as there is some warrant for believing that lime in denatured tea sweepings may not be a disadvantage to be removed, but a de-sirable element to be retained in the product for the manufacture of caffein, the use to which tea sweepings are put. (See Caffeine, Encyclopædia Britannica; Caffeine, New International Encyclopedia; Thorpe, Dictionary of Applied Chemistry, Vol. III, p. 935.)

The decision of the Board of General Appraisers is *reversed.*